1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTHA ARELLANO,

     Plaintiff,

  v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

Case No. CV 13-6750 JC

MEMORANDUM OPINION

## I. SUMMARY

  On September 19, 2013, plaintiff Martha Arellano ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before
the undersigned United States Magistrate Judge.

  This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[1]  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; September 20, 2013 Case Management Order ¶ 5.

---

[1]On February 11, 2014, plaintiff filed a reply to Defendant's Motion ("Reply").

1

1      Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3  ("the ALJ") are supported by substantial evidence and are free from material

4  error.[2]

5  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

6  **DECISION**

7      On July 11, 2006, plaintiff filed an application for Disability Insurance

8  Benefits.  (Administrative Record ("AR") 129).  Plaintiff asserted that she became

9  disabled on February 7, 2006, due to fibromyalgia, osteoarthritis, and anxiety.

10  (AR 156).  A prior Administrative Law Judge ("Prior ALJ") examined the medical

11  record and heard testimony from plaintiff (who was represented by counsel and

12  assisted by a Spanish language interpreter), a medical expert, and a vocational

13  expert on January 12, 2009.  (AR 33-76, 684-727).

14      On February 12, 2009, the Prior ALJ determined that plaintiff was not

15  disabled through the date of the decision ("pre-remand decision").  (AR 12-22,

16  662-72).  The Appeals Council denied plaintiff's application for review of the pre-

17  remand decision.  (AR 1, 673).

18      On August 9, 2010, this Court entered judgment reversing and remanding

19  the case for further proceedings because the Prior ALJ failed properly to consider

20  the opinions of plaintiff's treating physician, Dr. Noobar Janoian, and an

21  examining physician, Dr. Srinivasan.  (AR 680-83).  The Appeals Council in turn

22  remanded the case for a new hearing.  (AR 679).  On remand the ALJ reviewed the

23  medical record and heard testimony from plaintiff (who appeared with counsel and

24  ///

25

26      [2]The harmless error rule applies to the review of administrative decisions regarding

27  disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.

28  Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

was assisted by a Spanish language interpreter), medical expert Dr. David Brown, and a vocational expert on April 10, 2012 and July 31, 2012.  (AR 583-658).

On August 21, 2012, the ALJ determined that plaintiff was not disabled through the date last insured (*i.e.*, September 30, 2011) ("post-remand decision"). (AR 554-72).  Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe combination of physical impairments:  severe impairment of fibromyalgia, and non-severe impairments of hypertension, macular degeneration of the left eye, benign left parietal meningioma, obesity, small plantar calcaneal spurs of the feet bilaterally, diabetes mellitus (under adequate control), and small cataracts bilaterally (AR 557-60); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 560-61); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[3] (AR 561); (4) plaintiff could perform her past relevant work as accounting clerk, data entry clerk, personal attendant, and hybrid safety deposit box rental clerk/currency counter (AR 571); and (5) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 562).

The Appeals Council denied plaintiff's application for review of the post-remand decision.  (AR 517-20).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically

---

[3]The ALJ determined that as of the date last insured plaintiff:  (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk up to six hours a day; (iii) could sit up to six hours a day with scheduled breaks in a work setting; (iv) needed to avoid working at dangerous heights, such as on scaffolds and ladders; (v) needed to wear foot orthotics in enclosed shoes; and (vi) could not work in extreme cold or heat.  (AR 561).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

///

4

1   Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
2   Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
3   1110 (same).

4        The claimant has the burden of proof at steps one through four, and the
5   Commissioner has the burden of proof at step five.  Bustamante v. Massanari,
6   262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also
7   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial
8   burden of proving disability).

9        **B.**    **Standard of Review**

10       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
11  benefits only if it is not supported by substantial evidence or if it is based on legal
12  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
13  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
14  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
15  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
16  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
17  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
18  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

19       To determine whether substantial evidence supports a finding, a court must
20  "'consider the record as a whole, weighing both evidence that supports and
21  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
22  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
23  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
24  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
25  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

26  ///

27  ///

28  ///

1   **IV.   DISCUSSION**

2       **A.   The ALJ Properly Evaluated Plaintiff's Credibility**

3           **1.   Pertinent Law**

4       Questions of credibility and resolutions of conflicts in the testimony are

5   functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th

6   Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable

7   and is supported by substantial evidence, it is not the court's role to "second-

8   guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

9       An ALJ is not required to believe every allegation of disabling pain or other

10  non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)

11  (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes

12  the existence of a medically determinable impairment that could reasonably give

13  rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as

14  to the credibility of the claimant's statements about the symptoms and their

15  functional effect.  Robbins, 466 F.3d at 883 (citations omitted).  Where the record

16  includes objective medical evidence that the claimant suffers from an impairment

17  that could reasonably produce the symptoms of which the claimant complains, an

18  adverse credibility finding must be based on clear and convincing reasons.

19  Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160

20  (9th Cir. 2008) (citations omitted).  The only time this standard does not apply is

21  when there is affirmative evidence of malingering.  Id.  The ALJ's credibility

22  findings "must be sufficiently specific to allow a reviewing court to conclude the

23  ALJ rejected the claimant's testimony on permissible grounds and did not

24  arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882,

25  885 (9th Cir. 2004).

26      To find the claimant not credible, an ALJ must rely either on reasons

27  unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal

28  contradictions in the testimony, or conflicts between the claimant's testimony and

the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p.  Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment.  Burch, 400 F.3d at 681.

## 2.    Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints.  (Plaintiff's Motion at 3-15).  The Court finds no material error in the ALJ's assessment of plaintiff's credibility.

First, the ALJ properly discounted the credibility of plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  For example, as the ALJ noted, contrary to plaintiff's allegations of disabling mental and physical symptoms, plaintiff stated in her function report that she lived alone and, although with some difficulty, was able to engage in a variety of activities independently (*i.e.*, drive, cook simple meals, clean, do laundry, run errands, and grocery shop in "small portions" over four to six hours each day; watch TV; talk on the phone with family and friends every day; and sometimes go to her son's or a friend's house or church).  (AR 562) (citing Exhibit 3E [AR166-69, 171]).  As the ALJ noted, plaintiff also told doctors at various times that she was able to bathe and dress herself every day, cook simple meals, do laundry, clean, read, drive, and run

1  errands.  (AR 562) (citing Exhibits 3F at 5 [AR 286]; 11F at 2, 3 [AR 353, 354];

2  18F at 4, 5 [AR 454, 455]).  Plaintiff drove herself to a consultative examination

3  and had no difficulty undressing and dressing herself for the examination

4  (including removing and putting on her shoes).  (AR 562-63) (citing Exhibits 19F

5  at 3, 5 [AR 463, 465]; 21F at 1, 3 [AR 477, 479]).  The ALJ also noted that while

6  testifying plaintiff "attempted to downplay her activities" but still admitted that

7  she continued to live alone in an apartment, would spend time listening to the

8  radio, visiting with friends and walking, and that she was able to drive and prepare

9  simple meals like sandwiches.  (AR 563).

10      While plaintiff correctly notes that "one does not need to be 'utterly

11  incapacitated' in order to be disabled," Vertigan v. Halter, 260 F.3d 1044, 1050

12  (9th Cir. 2001), this does not mean that an ALJ must find that a claimant's daily

13  activities demonstrate an ability to engage in full-time work (i.e., eight hours a

14  day, five days a week) in order to discount the credibility of conflicting subjective

15  symptom testimony.  See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a

16  claimant's testimony when the claimant reports participation in everyday activities

17  indicating capacities that are transferable to a work setting . . . [e]ven where those

18  activities suggest some difficulty functioning. . . .") (citations omitted).  Here, the

19  ALJ properly discounted plaintiff's subjective symptom testimony to the extent

20  plaintiff's daily activities were inconsistent with a "totally debilitating

21  impairment."  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)

22  (finding that the claimant's ability to "take care of her personal needs, prepare

23  easy meals, do light housework and shop for some groceries . . . may be seen as

24  inconsistent with the presence of a condition which would preclude all work

25  activity") (citing Fair, 885 F.2d at 604).  While plaintiff argues that the record

26  does not reflect that she spent a "substantial part of [her] day" engaged in

27  activities that "are transferable to a work setting" (Plaintiff's Motion at 13), the

28  Court will not second-guess the ALJ's reasonable determination to the contrary,

8

1  even if the evidence could give rise to inferences more favorable to plaintiff.  See

2  Robbins, 466 F.3d at 882 (citation omitted).

3       Second, the ALJ properly discredited plaintiff's subjective complaints due

4  to internal conflicts within plaintiff's own statements and testimony.  See

5  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended

6  (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies

7  either in [plaintiff's] testimony or between his testimony and his conduct"); see

8  also Fair, 885 F.2d at 604 n.5 (ALJ can reject pain testimony based on

9  contradictions in plaintiff's testimony).  As the ALJ noted, contrary to her

10  statement in a disability report that she had stopped working due to her disability

11  (AR 156), plaintiff told an examining psychiatrist that she had stopped working

12  "after she was fired" and that she had continued to look for work until "Kaiser

13  Permanente gave her Disability due to pain" (AR 286).  The ALJ also found

14  plaintiff's statement in her disability report that she could not "read or write"

15  English (AR 155) to be inconsistent with plaintiff's testimony at the hearing that

16  she could "speak[,] read and write a little bit of English" (AR 633, 652, 688).  The

17  Court will not second guess the ALJ's reasonable conclusion that such

18  inconsistent statements, in part, diminished the credibility of plaintiff's other

19  testimony.  See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In

20  assessing the claimant's credibility, the ALJ may use 'ordinary techniques of

21  credibility evaluation,' such as considering the claimant's reputation for

22  truthfulness and any inconsistent statements in her testimony.").

23       Third, the ALJ properly discredited plaintiff's subjective complaints as

24  inconsistent with plaintiff's conservative medical treatment.  See, e.g., Meanel v.

25  Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of

26  credibility evaluation, treating physician's failure to prescribe, and claimant's

27  failure to request, medical treatment commensurate with the "supposedly

28  excruciating" pain alleged, and the "minimal, conservative treatment") (citing

9

1   Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); see Fair, 885
2   F.2d at 604 (ALJ permissibly considered discrepancies between the claimant's
3   allegations of "persistent and increasingly severe pain" and the nature and extent
4   of treatment obtained).  For example, as the ALJ noted, contrary to plaintiff's
5   allegedly disabling impairments, plaintiff received relatively routine treatment for
6   her physical complaints including, among other things, regular check ups and
7   general medication management (AR 281, 339-41, 343-51, 371-74, 376-77, 380,
8   382-88, 391, 393-96, 398-401, 403-04, 406-12), plaintiff was provided "a sub-
9   therapeutic level of anti-depressant" medication and otherwise "relatively routine"
10  mental health treatment (AR 1142-63), and was only monitored for her macular
11  degeneration of the left eye and cataracts (AR 1118-40), and her benign left
12  parietal meningioma (AR 382, 385, 426-28, 443-45, 495-96, 514-16, 1102-09,
13  1139-40).  In addition, despite plaintiff's allegedly disabling fibromyalgia, the
14  ALJ found no evidence that plaintiff "was under active treatment with a
15  rheumatologist" (i.e., a specialist in the appropriate field of medicine).  (AR 563);
16  see Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider
17  failure to "seek treatment or to follow a prescribed course of treatment" in
18  assessing credibility).  While an ALJ may not reject symptom testimony where a
19  claimant provides "evidence of a good reason for not taking medication," Smolen,
20  80 F.3d at 1284 (citations omitted), plaintiff has failed to present such a sufficient
21  reason.  Although plaintiff suggests that the clinic where plaintiff was a patient did
22  not have resources to provide specialists to treat plaintiff's particular issues
23  (Plaintiff's Motion at 14), the Court will not second guess the ALJ's contrary
24  finding that plaintiff, nonetheless, had not sought or been provided available
25  treatment commensurate with the severity of her alleged symptoms.

26      Finally, the ALJ properly discounted plaintiff's credibility in part because
27  plaintiff's pain and psychiatric symptoms were not fully corroborated by the
28  objective medical evidence.  See Rollins, 261 F.3d at 857 ("While subjective pain

10

testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  For example, the ALJ noted (and plaintiff points to no evidence to the contrary) that there is no medical record of muscle wasting or atrophy that would be expected if plaintiff had "extremely weak or zero grip strength" or needed to lie down throughout most of the day.  (AR 563, 566; see Meanel, 172 F.3d at 1114 (ALJ properly discredited plaintiff's testimony where there was no evidence of muscular atrophy or other physical sign usually seen in an "inactive, totally incapacitated individual").  In addition, the ALJ noted that contrary to plaintiff's complaints of disabling pain with movement, her records do not reflect "chronic and significant reduced range of motion due to pain."  (AR 563, 566-70; see AR 343, 346-48, 371-74, 376-77, 380, 382-88, 391, 393, 395-96, 398-401, 403-04, 406-12, 1041-42, 1049, 1053-54, 1058, 1060-62, 1066, 1070, 1072-75,1078, 1081-82, 1086, 1090, 1094, 1098).  As the ALJ also noted, and as discussed below, despite plaintiff's complaints about, among other things, disabling fibromyalgia symptoms, the medical evidence only reflects that plaintiff received "relatively routine treatment" from general practitioners.  (AR 563-64).  As the ALJ also noted, mental status examinations of plaintiff did not document any severe mental impairment, and there are no records of plaintiff receiving any psychiatric hospitalization or treatment for acute psychological or psychiatric illness.  (AR 562, 563; see AR 1142-63).

    To the extent the ALJ discounted plaintiff's credibility due to plaintiff's unexplained failure to appear for a consultative rheumatological examination, as plaintiff points out, such a finding appears to be incorrect.  (Compare AR 250-55 [Cal. Dept. of Social Services letter date June 12, 2008 scheduling plaintiff for rheumatic exam with "Carmel Medical Group" on July 12, 2008], AR 482 [Disability Determination Services Case Activity note dated July 9, 2008 stating

that "[plaintiff] did not keep rheumatologist appt."] with AR 236 (Cal. Dept. of Social Services letter dated June 4, 2008 scheduling plaintiff for rheumatic exam with "Monterey Park Medical Center" on June 18, 2008] and AR 463-66 [consultative examination of plaintiff by Dr. Srinivasan, a rheumatologist at the Monterey Park Medical Center.]).  In addition, the ALJ erroneously discounted plaintiff's credibility because a Social Security claims representative noted that during a face-to-face interview "[plaintiff] demonstrated no observable difficulties whatsoever during the interview."  (AR 562) (citing Exhibit 1E at 2 [AR 153]); see, e.g., Verduzco, 188 F.3d at 1090 (ALJ's reliance on observations of claimant proper where ALJ pointed to plaintiff's affirmative exhibition of symptoms which were inconsistent with both medical evidence and plaintiff's other behavior but did not point to the absence of the manifestation of external symptoms to discredit plaintiff, referring to the latter as disapproved "sit and squirm" jurisprudence). Any such errors, however, were harmless since there were several other reasons identified by the ALJ for discounting the credibility of plaintiff's subjective symptom testimony that were supported by substantial evidence, and such errors would not negate the validity of the ALJ's ultimate credibility conclusion in this case.  See Molina, 674 F.3d at 1115 (Where one or more reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if (1) the remaining "valid" reasons provide substantial evidence to support the ALJ's credibility conclusions, and (2) "the error does not negate the validity of the ALJ's ultimate [credibility] conclusion.") (citations and internal quotation marks omitted).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

///

///

///

///

12

**B.    The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician**

### 1.    Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn, 495 F.3d at 632 (citation and internal quotations omitted).  The ALJ

---

[4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1   can reject the opinion of a treating physician in favor of another conflicting

2   medical opinion, if the ALJ makes findings setting forth specific, legitimate

3   reasons for doing so that are based on substantial evidence in the record.  Id.

4   (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet

5   burden by setting out detailed and thorough summary of facts and conflicting

6   clinical evidence, stating his interpretation thereof, and making findings) (citations

7   and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not

8   recite "magic words" to  reject a treating physician opinion – court may draw

9   specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more

10   than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.

11   1988).  "He must set forth his own interpretations and explain why they, rather

12   than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting

13   the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d

14   599, 602 (9th Cir. 1989).

15              **2.    Analysis**

16       Plaintiff contends that the ALJ improperly rejected the opinions expressed

17   by Dr. Janoian in Fibromyalgia Disease Residual Functional Capacity

18   Questionnaires dated May 9, 2008 ("2008 Opinions")[5] and February 21, 2012

19   _____

20       [5]In the 2008 Opinions, Dr. Janoian diagnosed plaintiff with fibromyalgia and several
    other impairments (i.e., hypertension, osteoporosis, carpal tunnel syndrome, acute bronchitis,
21   depression and panic attacks, brain cyst, macular degeneration, restless leg syndrome, sleep
    apnea, "general weakness, internal fearfulness [and] loss of joy"), and opined, among other
22   things, that plaintiff (i) could sit continuously for only 30 minutes at a time, and could sit for a
    total of four hours in an eight hour work day with normal breaks; (ii) could stand for only 30
23   minutes at one time, and stand and/or walk for a total of about two hours in an eight hour work
    day with normal breaks; (iii) needed to walk around for five minutes every 20 to 30 minutes
24   during an eight hour work day; (iv) needed to be able to shift positions at will from sitting to
    standing and/or walking; (v) needed to take unscheduled breaks of 30 to 40 minutes about four to
25   five times during an eight hour work day; (vi) needed to have her legs elevated above heart level
    with prolonged sitting; (vii) could occasionally lift less than 10 pounds, but could not lift any
26   weight on a regular/repetitive basis; (viii) could never repetitively grasp, turn, or twist objects
27
                                                                    (continued...)
28

                                         14

1  ("2012 Opinions"),[6] specifically that plaintiff was essentially unable to perform

2  even sedentary work (collectively "Dr. Janoian's Opinions").  (Plaintiff's Motion

3  at 15-22) (citing AR 363-68, 1111-16).  A remand or reversal is not warranted on

4  this basis, however, because the ALJ properly rejected Dr. Janoian's Opinions for

5  clear and convincing, specific and legitimate reasons supported by substantial

6  evidence.

7      First, the ALJ properly discounted Dr. Janoian's Opinions to the extent they

8  were based on plaintiff's subjective complaints (AR 566, 569) which, as noted

9  above, the ALJ properly discredited.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211,

10  1217 (9th Cir. 2005) (ALJ properly rejected opinion of treating physician which

11

12  _____

13      [5](...continued)
   with her hands or do fine manipulation with her fingers; (ix) could repetitively reach with the

14  arms (including overhead) only 10% of the time; (x) could bend or twist at the waist only 10% of
   the time; (xi) would likely experience "good" and "bad" days as a result of her impairments; and

15  (xii) would be absent from work more than three times each month as a result of her
   impairments or related treatment.  (AR 363-68).

16

17      [6]In the 2012 Opinions, Dr. Janoian diagnosed plaintiff with fibromyalgia and several

18  other impairments (i.e., bursitis, lumbosacral spondylosis, benign neocerebral meninges,
   hypertension, cellulitis, myalgia and myositis, atrophic vaginitis, hyperlipidemia,

19  extrapyramidalis, osteoarthritis, carpal tunnel syndrome, depression and anxiety, urinary
   incontinence, macular degeneration, sleep apnea, Diabetes Mellitus II (uncontrolled), headaches,

20  lumbosacral degenerative disc, sciatica) and opined, among other things, that plaintiff (i) could
   sit continuously for only 20-30 minutes at a time, and could sit for a total of four hours in an

21  eight hour work day with normal breaks; (ii) could stand continuously for only 15 minutes at one
   time, and stand and/or walk for a total of about two hours in an eight hour work day with normal

22  breaks; (iii) needed to walk around for five minutes every 20 to 30 minutes during an eight hour
   work day; (iv) needed to be able to shift positions at will from sitting to standing and/or walking;

23  (v) needed to take unscheduled breaks once very hour for 30 minutes during an eight hour work
   day; (vi) needed to have her legs elevated above heart level with prolonged sitting; (vii) could

24  occasionally lift up to 10 pounds; (viii) could never repetitively grasp, turn, or twist objects with
   her hands or do fine manipulation with her fingers; (ix) could repetitively reach with the arms

25  (including overhead) only 10% of the time; (x) could bend or twist at the waist only five percent

26  of the time; (xi) would likely experience "good" and "bad" days as a result of her impairments;
   and (xii) would likely be absent from work more than three times each month as a result of her

27  impairments or related treatment.  (AR 1111-16).

28

1  was based solely on subjective complaints of claimant and information submitted

2  by claimant's family and friends).  To the extent plaintiff argues that the ALJ

3  failed properly to address plaintiff's "fibromyalgia complaints" (Plaintiff's Motion

4  at 19), plaintiff's argument lacks merit.  As plaintiff correctly notes, there is no

5  medically acceptable objective test for diagnosing fibromyalgia.[7]  Contrary to

6  plaintiff's suggestion, however, the ALJ found plaintiff's fibromyalgia to be a

7  severe impairment at step two without requiring objective evidence to confirm the

8  diagnosis, and the ALJ accounted for plaintiff's related subjective symptoms in the

9  residual functional capacity assessment to the extent plaintiff's statements

10  regarding the intensity and limiting effect of such symptoms were credible (AR

11  557, 561-62, 570).

12      Second, the ALJ properly discredited Dr. Janoian's Opinions to the extent

13  such opinions conflicted with the physician's own treatment records for plaintiff.

14  See Bayliss, 427 F.3d at 1216 (A discrepancy between a physician's notes and

15  recorded observations and opinions and the physician's assessment of limitations

16  is a clear and convincing reason for rejecting the opinion.).  For example, as the

17  ALJ noted, contrary to Dr. Janoian's statement in the 2012 Opinions that plaintiff

18

19  ───────────────

20  [7]While there are no laboratory tests for the presence or severity of fibromyalgia, courts
   have held that a physical examination which, *inter alia*, assesses the location and severity of

21  patient's pain and tests whether a patient has tenderness at a certain number of fixed locations on
   her body is a medically acceptable technique for diagnosing the condition.  See, e.g., Rollins, 261

22  F.3d at 855 (recognizing that "[t]he principal symptoms [of fibromyalgia] are 'pain all over,'
   fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other

23  diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the
   body . . . that when pressed firmly cause the patient to flinch") (citation and internal quotation

24  marks omitted); Perl v. Barnhart, 2005 WL 579879, *3 (E.D. Pa. Mar. 10, 2005) ("[R]eports
   from treating physicians that document symptoms [are important] in determining residual

25  functional capacity of claimant suffering from fibromyalgia because such observations may be
   the only type of 'medically acceptable clinical technique' available.") (citation omitted); see also

26  SSR 99-2p, n.3 (Social Security Administration follows criteria established by the American
   College of Rheumatology to determine whether a claimant has the medically determinable

27  impairment of fibromyalgia.).

28

had "moderately reduced [and] painful [range of motion]" (AR 1111), the treating physician's relevant progress notes do not reflect any limitation in plaintiff's range of motion due to pain.  (AR 569-70) (citing Exhibit 25F at 147-48 [AR 1041-42]; Exhibit 26F at 4, 8-9, 13, 15-17, 21, 25, 27-30, 33, 36-37, 41, 45, 49, 53 [AR 1049, 1053-54, 1058, 1060-62, 1066, 1070, 1072-75, 1078, 1081-82, 1086, 1090, 1094, 1098]).  Similarly, Dr. Janoian's 2008 Opinions that plaintiff's range of motion was "severely limited in all aspects of active motion" (AR 363) is inconsistent with the physician's related treatment notes which document only a few occasions when plaintiff's range of motion was mildly to moderately limited due to pain – none of which involved "all aspects of active motion."  (AR 343 [3/30/07 treatment note reflecting positive finding of limited range of motion due to finger and wrist pain only]; AR 346 [1/2/07 treatment note reflecting "moderately reduced [range of motion]" due to "tenderness" in lumbar spine, "mildly reduced [range of motion]" in right hand and "moderately reduced [range of motion]" in left hand due to "Bochard's nodes"]; AR 347 [11/30/06 treatment note reflecting "mildly" reduced range of motion due to left elbow tenderness only]; AR 348 [10/30/06 treatment note reflecting "mildly reduced [range of motion]" due to lumbar spine tenderness only]).  As the ALJ also noted, progress notes from other physicians from Dr. Janoian's clinic who treated plaintiff do not mention limitation in range of motion at all.  (AR 566-67) (citing Exhibits 13F at 3-6, 8-9, 12, 14-20, 23, 25, 27-28, 30-33, 35-36, 38-44 [AR 371-74, 376-77, 380, 382-88, 391, 393, 395-96, 398-401, 403-04, 406-12]).  The ALJ also noted that Dr. Janoian's diagnosis in the 2012 Opinions that plaintiff had "uncontrolled" diabetes is inconsistent with plaintiff's medical records which reflect that plaintiff's diabetes was adequately controlled by medication.  (AR 570; see AR 1111).

        In addition, as the ALJ noted, contrary to Dr. Janoian's opinions that plaintiff had disabling functional limitations, treatment notes reflect multiple times

1  from 2009 through 2012 when Dr. Janoian recommended that plaintiff engage in

2  "aerobic exercises" and/or a "walking program." (AR 570) (citing Exhibit 25F at

3  92, 95, 102, 109, 115, 119, 122, 125, 129, 133, 137, 141, 146, 149 [AR 986, 989,

4  996, 1003, 1007, 1013, 1016, 1019, 1023, 1027, 1031, 1035, 1040, 1043]; Exhibit

5  26F at 5, 9, 13-14, 21-22, 26, 34, 42, 45-46, 50, 54 [AR 1050, 1054, 1058-59,

6  1066-67,1071, 1079, 1087, 1090-91, 1095, 1099]). Similarly, a December 11,

7  2007 progress record notes that another treating physician also recommended

8  "aerobic exercises," "shoulder girdle exercises, and a "walking program" for

9  plaintiff. (AR 566-67) (citing Exhibit 13F at 19 [AR 387]).

10      Third, the ALJ also properly rejected Dr. Janoian's Opinions to the extent

11  they were unsupported by the physician's own notes or the record as a whole. See

12  Bayliss, 427 F.3d at 1217 ("The ALJ need not accept the opinion of any physician,

13  including a treating physician, if that opinion is brief, conclusory, and

14  inadequately supported by clinical findings.") (citation and internal quotation

15  marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating

16  physician's opinion properly rejected where treating physician's treatment notes

17  "provide no basis for the functional restrictions he opined should be imposed on

18  [the claimant]"). For example, Dr. Janoian's treatment records do not support the

19  significant limitations stated in the 2008 Opinions. As the ALJ noted, it appears

20  that Dr. Janoian had not personally treated plaintiff since May 30, 2007 (i.e.,

21  almost a year before Dr. Janoian prepared the 2008 Opinions). (AR 567) (citing

22  Exhibit 10F at 3-4 [AR 339-40]; Exhibit 25F at 18-19 [AR 912-13]). Even so,

23  plaintiff's "chief complaints [or] concerns" at the May 30, 2007 appointment (i.e.,

24  "labile [blood pressure] . . . associated with headaches and pain in the back of her

25  neck") had little to do with plaintiff's alleged disabling symptoms, and a physical

26  exam of plaintiff at that time revealed only "tenderness" and "moderate pain [with]

27  motion" in plaintiff hands, and "[g]eneralized muscle tenderness." (AR 339). In

28  addition, as the ALJ noted, contrary to Dr. Janoian's opinion that plaintiff had a

1   "poor" response to treatment (AR 363), on the date the 2008 Opinions were

2   prepared it does not appear that Dr. Janoian even examined plaintiff or that

3   plaintiff received any "treatment" apart from a routine gynecological exam by a

4   different doctor.  (AR 566) (citing Exhibit 13F at 3-4 [AR 371-72]).

5        Similarly, Dr. Janoian's earlier relevant treatment records generally reflect

6   routine treatment mostly for mild to moderate pain with some limited reduction in

7   range of motion.  (AR 341 [4/30/07 exam note: complaints of "generalized

8   weakness and muscle pain" with "[g]eneralized tenderness of muscles" on

9   physical examination]; AR 343 [3/30/07 exam note: complaints of "[c]hronic

10  fibromyalgia" with moderate finger/wrist pain on examination]; AR 344 [3/2/07

11  exam note: complaints of back pain and sciatica but with "[n]ormal musculature"

12  and "no skeletal tenderness or joint deformity" on examination]; AR 345 [1/30/07

13  exam note: complaints of "muscular pain all over [plaintiff's] body, aching,

14  disabling her from normal daily activities" noted in connection with "routine visit

15  [for] medication refill"]; AR 346 [1/2/07 exam note: tenderness in spine with

16  "moderately reduced" range of motion, "Bouchard's nodes" in right and left hands

17  with mild-moderate reduction of range of motion, left knee tenderness]; AR 347

18  [11/30/06 exam note:  tenderness in lumbar spine, left elbow, left hip, and left

19  knee, "moderate pain w/ motion," with "mildly reduced" range of motion in left

20  elbow noted during "routine visit"]; AR 348 [10/30/06 exam note: physical exam

21  reflects tenderness in lumbar spine with paravertebral muscle spasm and "mildly

22  reduced" range of motion]; AR 350 [9/29/06 exam note: "no acute complaints"

23  noted in connection with visit for only "medication refill"]; AR 351 [8/30/06 exam

24  note: complaint of "skin tag" on breast, generalized mild to moderate pain with

25  motion, tenderness in knees with "mildly reduced" range of motion]; AR 281

26  [5/3/06 exam note: complaints of "pain all over the body . . . in the joint and

27  muscles"]).

28  ///

19

1    In addition, the decision includes a lengthy and detailed discussion of
2    progress records from other physicians in Dr. Janoian's clinic who treated plaintiff
3    during the relevant period leading up to the 2008 Opinions which reflect routine
4    treatment for complaints of only mild to moderate pain and unrelated illnesses.
5    (AR 566-67) (citing Exhibit 13F at 3-6, 8-9, 12, 14-20, 23, 25, 27-28, 30-33, 35-
6    36, 38-44 [AR 371-74, 376-77, 380, 382-88, 391, 393, 395-96, 398-401, 403-04,
7    406-12]).  Also, as noted above, medical records reflect that physicians only
8    monitored plaintiff's cataracts and benign left parietal meningioma.  (AR 382,
9    385, 426-28, 443-45, 495-96, 514-16, 1102-09, 1117-40).  The ALJ reasonably
10   concluded that such a "relatively routine treatment history" does not support Dr.
11   Janoian's 2008 Opinions.  (AR 566, 568).

12   Moreover, as the ALJ also noted, Dr. Janoian's later treatment records do
13   not support the "chronic and significant abnormal findings" noted in the 2012
14   Opinions.  (AR 569).  For example, while Dr. Janoian's progress notes from 2011
15   to 2012 generally reflect that plaintiff had mild to moderate pain with motion,
16   some also reflect that plaintiff's extremities at times appeared "normal" and that
17   medication helped to lessen plaintiff's symptoms, and others suggest that in some
18   instances Dr. Janoian did not find plaintiff's condition serious enough to warrant
19   doing any physical examination.  (AR 569-70) (citing Exhibit 25F at 147-48 [AR
20   1041-42]; Exhibit 26F at 4, 8-9, 13, 15-17, 21, 25, 27-30, 33, 36-37, 41, 45, 49, 53
21   [AR 1049, 1053-54, 1058, 1060-62, 1066, 1070, 1072-75, 1078, 1081-82, 1086,
22   1090, 1094, 1098]).  In addition, although Dr. Janoian reported that plaintiff
23   experienced side effects from her pain medication, the ALJ noted that medical
24   records from Dr. Janoian and others in the same clinic do not substantiate any
25   chronic or significant medication side effects that could not adequately be
26   addressed (*i.e.*, by changing medication, dosage, time taken).  (AR 568, 570).
27   Plaintiff's treating psychiatrist also did not report any chronic or significant
28   ///

1  medication side effects that could not adequately be addressed.  (AR 570) (citing

2  Exhibits 30F-31F [AR 1141-63]).

3       While plaintiff suggests that the medical evidence reflects more significant

4  functional limitations (Plaintiff's Motion at 19-22), this Court will not second-

5  guess the ALJ's reasonable determination (supported by substantial evidence) that

6  it does not, even if such evidence could give rise to inferences more favorable to

7  plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

8       Fourth, the ALJ properly rejected Dr. Janoian's Opinions to the extent the

9  treating physician's records lacked evidence of supporting objective medical

10 testing.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) ("ALJ []

11 permissibly rejected [opinions] . . . that did not contain any explanation of the

12 bases of their conclusions."); see, e.g., De Guzman v. Astrue, 343 Fed. Appx. 201,

13 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain

14 any explanation of the bases of their conclusions.'") (citing id.).  For example,

15 although Dr. Janoian found that plaintiff essentially had very little use of her

16 hands and fingers (AR 367, 115-16, 1111), none of such physician's medical

17 records reflect objective testing of plaintiff's sensation or grip strength.  (AR 570).

18 Similarly, Dr. Janoian's records discussed above also lack evidence of objective

19 medical testing which supports Dr. Janoian's diagnosis of numerous other

20 impairments (i.e., lumbosacral spondylosis, cellulitis, urinary incontinence, carpal

21 tunnel syndrome, sleep apnea, restless leg syndrome) or that, despite treatment,

22 such impairments caused the noted significant functional limitations for any

23 period of 12 consecutive months.[8]  (AR 567-68, 570).

24

25 _____

26      [8]Contrary to plaintiff's suggestion, treatment records which reflect that other physicians
   tested and diagnosed plaintiff with sleep apnea, restless leg syndrome and carpal tunnel
27 syndrome in 2003 and 2004 (i.e., years before plaintiff's alleged onset date and before Dr.
   Janoian even began treating plaintiff) do not support Dr. Janoian's conclusory diagnoses of such
28 disorders.

1     Fifth, the ALJ properly rejected Dr. Janoian's Opinions to the extent they

2 were inconsistent with plaintiff's demonstrated abilities and/or own statements

3 regarding her functional abilities.  See Morgan, 169 F.3d at 601-02 (ALJ may

4 reject medical opinion that is inconsistent with other evidence of record including

5 claimant's statements regarding daily activities).  For example, Dr. Janoian found

6 that plaintiff had "zero" ability to repetitively grasp, turn or twist objects or do fine

7 manipulation with the fingers of either hand.  (AR 363, 367, 115-16).  The medical

8 expert testified, however, that if plaintiff had such severe limitation in her hands,

9 "she would not be able to even grip or drive a car." (AR 598-99).  Thus, the ALJ

10 reasonably concluded that Dr. Janoian's opinion that plaintiff's hands were

11 "essentially useless" was inconsistent with plaintiff's demonstrated abilities.

12 (AR 566).

13     Sixth, with respect to plaintiff's alleged mental impairments, although the

14 medical record reflects that plaintiff repeatedly complained about depression and

15 anxiety and was prescribed antidepressants (AR 374, 376, 390-91, 401, 495, 501-

16 02, 981, 1009, 1022-23,1042, 1096, 1098), as the ALJ noted, Dr. Janoian's

17 treatment notes do not contain any objective medical testing which substantiates

18 any severe mental impairment based on such complaints.  Again, the ALJ was

19 permitted to reject Dr. Janoian's Opinions to the extent they were based solely on

20 plaintiff's subjective complaints.  See Bayliss, 427 F.3d at 1217.  Moreover, as

21 discussed below, no other medical evidence in the record supported a finding that

22 plaintiff had a severe mental impairment.

23     Finally, the ALJ properly rejected Dr. Janoian's Opinions in favor of the

24 conflicting opinions of the state-agency examining orthopaedic surgeon, Dr.

25 H. Harlan Bleecker (who essentially determined that plaintiff could "sit, stand and

26 walk 6 out of 8 hours," could "lift 25 pounds occasionally [and] 10 pounds

27 frequently," and had "no restrictions to the upper or lower extremities") (AR 297),

28 and the testifying medical expert, Dr. Brown (whose residual functional capacity

1   assessment the ALJ mostly adopted) (see AR 561, 596-97).  The opinion of Dr.

2   Bleecker was supported by his independent examination of plaintiff (AR 294-95),

3   and thus, even without more, constituted substantial evidence upon which the ALJ

4   could properly rely to reject the treating physician's opinions.  See, e.g.,

5   Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own

6   constituted substantial evidence, because it rested on independent examination of

7   claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Dr. Brown's

8   testimony also constituted substantial evidence supporting the ALJ's decision

9   since it was supported by and consistent with the other medical evidence in the

10  record including Dr. Bleecker's opinion and underlying independent examination.[9]

11  See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as

12  substantial evidence when "they are supported by other evidence in the record and

13  are consistent with it").

14      Dr. Brown did not, as plaintiff contends (Plaintiff's Motion at 21), rely

15  solely on the same clinical findings used by Dr. Janoian (i.e., treatment records

16  from Dr. Janoian and other physicians in the same medical group).  See Orn, 495

17  F.3d at 632 ("When an examining physician relies on the same clinical findings as

18

19      [9]The ALJ's decision was also supported by the opinions of the state-agency examining
20  rheumatologist, Dr. R. Srinivasan (AR 463-72, 473-81) and the state-agency examining
    psychiatrist, Dr. William Goldsmith (AR 352-60, 453-60), neither of whom opined that plaintiff
21  could not work for any continuous twelve-month period.  See Matthews v. Shalala, 10 F.3d 678,
22  680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized:  "None of
    the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord
23  Curry, 925 F.2d at 1130 n.1 (upholding Commissioner and noting that after surgery, no doctor
    suggested claimant was disabled).  The record belies plaintiff's assertion that the ALJ "rejected
24  the reports" of Dr. Goldsmith and Dr. Srinivasan."  (Plaintiff's Motion at 20) (citing AR 565).  In
    the decision, the ALJ essentially adopted Dr. Goldsmith's opinion (i.e., that plaintiff had "[no]
25  significant [psychiatric] impairment").  (AR 559) (citing Exhibits 11F, 18F [AR 352-60, 453-
26  60]).  Moreover, the ALJ did not entirely reject, but instead merely discounted the weight given
    to Dr. Srinivasan's opinions.  (AR 565) ("I give less weight . . . to [Dr. Srinivasan's] opinion")
27  (emphasis added).  It was the sole province of the ALJ to resolve any conflict in this properly
28  supported medical opinion evidence.  Andrews, 53 F.3d at 1041.

1  a treating physician, but differs only in his or her conclusions, the conclusions of

2  the examining physician are not "'substantial evidence.'").  Instead, as noted

3  above, Dr. Brown also relied, in part, on the opinion of Dr. Bleecker which itself

4  was based on the examining physician's independent clinical findings (*i.e.*,

5  "findings based on objective medical tests that the treating physician has not []

6  considered").  Id. ("[W]hen an examining physician provides 'independent clinical

7  findings that differ from the findings of the treating physician,' such findings are

8  'substantial evidence.'") (citations omitted).

9         Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

10  **C.    The ALJ Properly Evaluated the Severity of Plaintiff's Mental**

11  **Impairments**

12         **1.    Pertinent Law**

13         At step two of the sequential evaluation process, plaintiff has the burden to

14  present evidence of medical signs, symptoms and laboratory findings[10] that

15  establish a medically determinable physical or mental impairment that is severe,

16  and that can be expected to result in death or which has lasted or can be expected

17  to last for a continuous period of at least twelve months.  Ukolov v. Barnhart,

18  420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3),

19  1382c(a)(3)(D)); see 20 C.F.R. § 404.1520.  Substantial evidence supports an

20  ALJ's determination that a claimant is not disabled at step two where "there are no

21

22         [10]A medical "sign" is "an anatomical, physiological, or psychological abnormality that
    can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov
23  v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p at *1 n.2).  A "symptom"
    is "an individual's own perception or description of the impact of his or her physical or mental
24  impairment(s)[.]"  Id. (quoting SSR 96-4p at *1 n.2); see also 20 C.F.R. § 404.1528(a)-(b).
    "[U]nder no circumstances may the existence of an impairment be established on the basis of
25  symptoms alone."  Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p at *1-2
    ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's
26  complaints may appear to be, the existence of a medically determinable physical or mental
    impairment cannot be established in the absence of objective medical abnormalities; i.e., medical
27  signs and laboratory findings.").

28

medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p at *1-*2).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen, 80 F.3d at 1290.  Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

## 2.   Additional Pertinent Facts

To the extent plaintiff claimed she was disabled due to a medically determinable *mental* impairment, the Prior ALJ reached his step-two determination based on an evaluation of the four broad functional areas known as "paragraph B" criteria.  Specifically, the Prior ALJ determined – essentially based on the opinions of the state-agency examining psychiatrists (i.e., Dr. Suzanne Ashman[11] and Dr.

---

[11]In the report of an October 9, 2006 comprehensive psychiatric evaluation, Dr. Ashman diagnosed plaintiff with major depressive disorder, panic disorder without agoraphobia, and pain syndrome, and opined that (i) although "[plaintiff's] difficulty sleeping and her panic attacks" would cause "interruption to a normal work day or work week," any "[limitation] in her ability to complete a normal work day or work week without interruption[]" would be "minimal[]"; and plaintiff was still able to (ii) "perform detailed and complex tasks"; (iii) "maintain regular attendance"; (iv) "perform work activities on a consistent basis" without "special supervision"; (v) "accept instructions from supervisors" and "interact with coworkers and the public"; and (vi) "deal with the usual stressors encountered in competitive work."  (AR 287-88).

1  William Goldsmith[12]) and the state-agency reviewing psychiatrist – that plaintiff

2  had mild limitation in activities of daily living, social functioning, and

3  concentration, persistence, or pace, and no episodes of decompensation of

4  extended duration.  (AR 15-17) (citing Exhibits 3F [AR 284-89], 5F [AR 300-10],

5  11F [AR 352-57]).

6       In December 2010 (*i.e.*, after the Prior ALJ issued the "pre-remand

7  decision"), plaintiff began treatment with the Northeast Mental Health Center

8  ("Northeast").  (AR 1141-63).  In the post-remand decision, the ALJ adopted the

9  Prior ALJ's step-two determination that plaintiff did not have a severe mental

10  impairment, and also concluded that the records of plaintiff's mental health

11  treatment at Northeast did not alter that determination.  (AR 559-60) (citing

12  Exhibit 3A at 7 [AR 559; see AR 15]).

13           **3.**    **Analysis**

14       Plaintiff contends that a reversal or remand is warranted because the ALJ

15  failed to find that plaintiff's depression and anxiety were severe mental

16  impairments.  (Plaintiff's Motion at 22-26).  The Court disagrees.

17       In determining whether or not a plaintiff's mental impairment is severe,

18  ALJs are required to evaluate the degree of mental limitation in the following four

19  areas:  (1) activities of daily living; (2) social functioning; (3) concentration,

20  persistence, or pace; and (4) episodes of decompensation.  If the degree of

21  

---

22      [12]In the report of a June 23, 2008 complete psychiatric evaluation, Dr. William Goldsmith
diagnosed plaintiff with "physical condition affecting psychological function," and opined that

23  (i) plaintiff could understand, remember and carry out simple one or two step instructions;

24  (ii) plaintiff's ability to do detailed and complex instructions was intact; (iii) plaintiff's ability to
relate and interact with supervisors, coworkers and the public was intact; (iv) plaintiff's ability to

25  maintain concentration and attention, persistence and pace was "slightly impaired"; (v) plaintiff's
ability to associate with day-to-day work activity, including attendance and safety, was dormant

26  but could be revived; (vi) plaintiff's ability to adapt to stresses common to a normal work
environment was dormant but could be revived; and (vii) plaintiff's ability to maintain regular

27  attendance in the workplace and perform work activities on a consistent basis, and without

28  special or additional supervision was intact.  (AR 352-57).

limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in her ability to perform basic work activities.[13]  See 20 C.F.R. § 404.1520a(c)-(d).

The Prior ALJ found only mild limitations in plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace, with no episodes of decompensation.  (AR 17, 559) (citing Exhibit 5F [AR 300-10]).  Therefore, the Prior ALJ properly concluded that plaintiff did not have a severe mental impairment.  See 20 C.F.R. § 404.1520a(d)(1).  Substantial medical evidence supported the Prior ALJ's conclusion.  As the Prior ALJ noted, his findings virtually mirrored the state-agency reviewing psychiatrist's assessment of the "paragraph B" criteria – which assessment is consistent with the findings of the state-agency examining psychiatrists and the record medical evidence.  (AR 15-17) (citing, *inter alia*, Exhibit 5F [AR 300-310]).  Such medical opinions constitute substantial evidence which supported the Prior ALJ's findings.  See Tonapetyan, 242 F.3d at 1149 (opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record) (citations omitted); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").  Consequently, substantial evidence supports the ALJ's adoption of the Prior ALJ's step two determination.

Plaintiff's treatment records from Northeast do not undercut the pre-remand step two determination.  The Northeast records reflect that plaintiff's treating physician did not refer her for mental health treatment until November 22, 2010

---

[13]Basic work activities include:  (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting.  See 20 C.F.R. § 404.1521.

1  (*i.e.*, less than three months before plaintiff's date last insured), and plaintiff was

2  not evaluated at Northeast until December 6 of that year.  (AR 559) (citing

3  Exhibits 25F at 141 [AR 1035], 30F at 20 [AR 1160]).  In addition, the ALJ

4  reasonably found, the Northeast treatment records reflect that (i) on initial

5  assessment, other than her subjective complaints, plaintiff's mental status

6  evaluation was unremarkable; (ii) the Northeast psychiatrist diagnosed plaintiff

7  with depression based on plaintiff's subjective complaints rather than any

8  objective clinical findings; and (iii) plaintiff's mental impairments were promptly

9  addressed by prescribed medication.  (AR 559-60) (citing Exhibit 26F at 2 [AR

10  1047]; Exhibit 30F at 2, 10, 19 [AR 1142, 1150, 1159]); see, e.g., Warre v.

11  Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir.

12  2006) ("Impairments that can be controlled effectively with medication are not

13  disabling for the purpose of determining eligibility for SSI benefits.") (citations

14  omitted).  While plaintiff suggests that such medical records reflect mental

15  impairments that are "severe" (Plaintiff's Motion at 25-26), this Court will not

16  second-guess the ALJ's reasonable interpretation otherwise, even if such evidence

17  could give rise to inferences more favorable to plaintiff.

18      Plaintiff complains that the ALJ improperly evaluated the Northeast records

19  without the aid of a medical professional.  (Plaintiff's Motion at 25-26); see

20  Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct.15, 2003) ("The

21  ALJ is not allowed to use his own medical judgment in lieu of that of a medical

22  expert.").  To the extent the ALJ erred in considering such records, the Court

23  concludes that any error was harmless because it was inconsequential to the ALJ's

24  ultimate nondisability determination.  See Sawyer v. Astrue, 303 Fed. Appx. 453,

25  455 (9th Cir. 2008) (error in ALJ's failure properly to consider medical opinion

26  evidence considered harmless "where the mistake was nonprejudicial to the

27  claimant or irrelevant to the ALJ's ultimate disability conclusion. . . .") (citing

28  Stout, 454 F.3d at 1055).  First, plaintiff points to no finding in the Northeast

1    records which suggests that plaintiff's mental impairments had more than a

2    minimal effect on her ability to work.[14]  Second, no medical provider at Northeast

3    opined that plaintiff's mental impairments would prevent her from doing work

4    other than "simple tasks" for any continuous period of at least twelve months

5    (which, according to plaintiff, would require a finding of disability under the

6    "Grids").

7          Accordingly, plaintiff is not entitled to a remand or reversal on this basis.

8    **V.    CONCLUSION**

9          For the foregoing reasons, the decision of the Commissioner of Social

10   Security is affirmed.

11         LET JUDGMENT BE ENTERED ACCORDINGLY.

12   DATED:  March 18, 2014

13                                      _____
                                              /s/
14                                      Honorable Jacqueline Chooljian

15                                      UNITED STATES MAGISTRATE JUDGE

16

17

18   _____

19        [14]As plaintiff correctly notes, Dr. Ashman stated in her October 9, 2006 psychiatric
     evaluation that "[d]ue to [plaintiff's] difficulty sleeping and her panic attacks, there would be
20   interruption [in plaintiff's] normal work day or work week."  (AR 288).  To the extent plaintiff
     argues that Dr. Ashman's statement reflects a medical opinion that plaintiff's mental
21   impairments were "severe" (*i.e.*, caused more than "minimal" limitation in plaintiff's ability to
     perform basic work activities), plaintiff's argument is soundly refuted by Dr. Ashman's
22   discussion which emphasized that the "interruption" from plaintiff's symptoms (*i.e.*, difficulty
     sleeping and panic attacks) would cause only a "*minimal* limitation" in plaintiff's "ability to
23   complete a normal work day or work week without interruptions resulting from her psychiatric
     condition."  (AR 288) (emphasis added).  Plaintiff also notes that Dr. Brown testified that he
24   thought it "important . . . to note the presence of [plaintiff's psychiatric] conditions."  (Plaintiff's
     Motion at 26) (citing AR 590).  When considered in the context of Dr. Brown's entire testimony,
25   however, this isolated and conclusory statement does not reasonably support plaintiff's
     suggestion that the medical expert opined at the hearing that plaintiff's mental impairments were
26   severe.  Moreover, this Court will not second guess the ALJ's implicit determination that the
     foregoing evidence did not reflect any mental impairments that were severe.

27

28